UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID W. FAUNCE,<br><br>   Plaintiff,<br><br>   v.<br><br>JOSEPH BICK, et al.,<br><br>   Defendants. | Case No. 1:25-cv-00006-KES-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 1, 9, 17)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

    David W. Faunce ("Plaintiff") is a federal prisoner proceeding *pro se* and *in forma pauperis* in this action. Plaintiff filed the complaint commencing this action on January 3, 2025. (ECF No. 1).

    On April 4, 2025, the Court issued a screening order, finding that Plaintiff's complaint failed to state any cognizable claims. (ECF No. 9). The Court provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to state a claim, and gave Plaintiff leave to file a First Amended Complaint. (*Id.*). The Court also gave Plaintiff the option of standing on his complaint, subject to the Court issuing findings and recommendations to a district judge consistent with this order. (*Id.* at 19).

    Plaintiff then filed two motions for extension of time to respond to the screening order (ECF No. 10, 12), which the Court granted. (ECF No. 11, 14). On August 11, 2025, Plaintiff

1

filed a declaration, notifying the Court that he was unable to amend his complaint because, among other things, he cannot go back to his prison for materials, and he cannot establish facts without discovery related to the claims he is trying to bring.  (ECF No. 17).

Accordingly, for the reasons set forth below, the Court recommends that this action be dismissed for failure to state a claim.  Plaintiff has thirty days from the date of service of these findings and recommendations to file his objections.

I.  **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 4), the Court may also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  *Id.* at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff alleges as follows in his complaint:

Plaintiff alleges that he is "a 78-year old state prisoner with severe COPD, heart disease and is mobility impaired, who has been continuously incarcerated for 43 years." (ECF No. 1 at 2). At the time of filing his complaint, he was incarcerated at Valley State Prison-Chowchilla (VSP) (*id.*), he has since been moved to El Dorado County Jail (ECF No. 8).

Plaintiff names as Defendants the following individuals in their individual and official capacities (ECF No. 1 at 3):

1) Joseph Bick, as Director of the CDCR Division of Correctional Health Care Services.

2) Defendant Recary, as the Chief Medical Executive Officer ("MCEO") at VSP.

3) Dr. H. Longia is a licensed physician employed as the Chief Medical Executive ("CME") at VSP.

4) Defendant Dr. Jason Mevi is a licensed physician employed as the Chief Physician/Surgeon at VSP under the supervision of Defendants Recary and Longia.

5) Defendant Dr. James Chau is a licensed physician/surgeon employed as a PCP at VSP under direct supervision of Mevi and Longia.

Plaintiff's allegations will be discussed in more detail below. However, his claims generally stem from his contention that he was denied or delayed medications for his breathing difficulties, was not issued orthotic shoes, and received the wrong urology medications. Plaintiff alleges that some of these denials were due at least in part to a cost-cutting policy.

As for relief, Plaintiff asks for damages and various forms of injunctive relief. (ECF No. 1 at 18–19).

Finally, Plaintiff attaches copies of his Requests for Interview as exhibits. (ECF No. 21–25).

\\\

**III.     ANALYSIS OF PLAINTIFF'S CLAIMS**

    **A.  42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676–77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 695 (1978).

**B. Deliberate Indifference to Serious Medical Needs**

   **1. Legal Standard**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992)) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836–37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to

establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

### 2. Breathing medications

With respect to allegations related to medications for breathing difficulties, Plaintiff alleges that Dr. Chau was deliberately indifferent to Plaintiff's serious medical needs when he delayed or denied prescribing certain medications to Plaintiff and that supervising defendants at CDCR knew of the violations because of Plaintiff's requests for interview, yet failed to act to prevent them.

####   a.  Plaintiff's allegations Regarding Deliberate Indifference to Serious Medical Needs for Failure to Prescribe Breathing Medications

Specifically, Plaintiff alleges that while at RJD from about January 19, 2018, to February 23, 2023, Plaintiff suffered chronic allergy episodes producing excessive sinus mucous drainage problems causing chronic chest congestion that exacerbated Plaintiff's COPD and cardiac stress. For these afflictions Plaintiff had standing prescriptions for "Azelastine" and "Nasacort" nasal sprays, "Singulair," "Spiriva" and two inhalers. (ECF No. 1 at 6).

After Plaintiff was transferred to VSP on February 23, 2023, Plaintiff's prescriptions continued without interruption until January 10, 2024, when they were cancelled. (*Id.*)

Plaintiff repeatedly requested renewal of the Azelastine and Nasacort nasal sprays using CDCR Forms 7362, on February 13, 17, 20, and March 1, 2024. Plaintiff received no response to these requests for medication and did not see a physician. (*Id.* at 7).

On March 13, 2024, Plaintiff again complained of breathing difficulty, excess sinus drainage, constant coughing up mucous and to see a physician. On March 14, 2024, Defendant Chau issued a prescription for Azelastine only, without seeing or examining Plaintiff. Plaintiff received only one bottle until April 26, 2024. (*Id.*)

On March 21, 2024, Plaintiff saw Defendant Chau, who gave Plaintiff a cursory examination, gave him a pair of therapeutic shoes, and tersely informed Plaintiff that he already gave Plaintiff a prescription for Azelastine only—not for Nasacort or Singulair. Dr. Chau explained that Singulair was contra-indicated for use with the "Asamax" Inhaler. Dr. Chau further told Plaintiff not to ask for Nasacort and get a free saline nasal spray at the canteen instead. When Plaintiff asked why, Chau said something about the state budget crisis. (*Id.*)

From the time of visit with Dr. Chau on March 21, 2024, until April 22, 2024, Plaintiff continued to suffer breathing difficulties due to excessive post-nasal discharge congesting Plaintiff's chest and exacerbating Plaintiff's COPD, which further caused extreme stress on Plaintiff's heart. (*Id.*)

On April 10, 2024, Plaintiff requested renewal of his breathing medications and again received no reply. (*Id.* at 8).

On February 20, March 15, and April 10, 2024, Plaintiff sent written requests on Form GA-22 Interview Requests for help to Defendants Dr. Mevi, Dr. Longia (Feb. 10 and March 15, 2024 requests), and Dr. Longia and Recary (April 10, 2024 requests). Plaintiff did not receive any responses. (*Id.*)

On April 22, 2024, Plaintiff collapsed in his cell with acute breathing difficulty. Plaintiff was taken off-site to Merced Mercy Hospital by ambulance. At Mercy Hospital Plaintiff was immediately placed on oxygen and given IV antibiotics. Chest X-rays showed that Plaintiff suffered from pneumonia, severe chest congestion due to allergy-triggered acute post-nasal drainage that in turn aggravated Plaintiff's pre-existing COPD. Plaintiff remained on this treatment regimen until discharged and returned to VSP-Chowchilla on April 25, 2024.

7

(*Id.*).  Before Plaintiff was discharged, he was prescribed another 5-day dose of antibiotics, as well as Azelastine, Nasacort, and Singulair.  (*Id.*)

The next day, on April 26, 2024, Dr. Chau re-prescribed Plaintiff's Azelastine and Singulair prescriptions without ever seeing Plaintiff, but discontinued Nasacort despite being prescribed by hospital physicians.  (*Id.* at 9).

On April 27, 2024, Plaintiff attempted to see Dr. Chau, but he left for a 4-day weekend.  On May 3, 2024, Plaintiff saw Dr. Chau, who informed Plaintiff that he prescribed Azelastine and Singulair, a 5-day regimen of antibiotics but no Nasacort, stating that that the prison Pharmacist "didn't recommend using Azelastine with Nasacort" and refused to dispense it despite Chau's alleged prescription.  Chau explained that "these decisions came from higher up" and not him.  Chau again told Plaintiff to again use a saline spray from the canteen, which was ineffective. Plaintiff continued to suffer continuous coughing up post-nasal mucous and allergy-driven acute nasal discharges daily until approximately July 14, 2024.  (*Id.*)

On July 15, 2024, Plaintiff again requested Nasacort for his allergies. Defendant Chau prescribed "Triamcinolone" nasal spray as a substitute.  It was/is effective.  (*Id.*)

On October 27, 2024, after approximately 10-12 days of breathing problems, Plaintiff was again hospitalized with a diagnosis of "aggravated COPD."  Plaintiff was treated with oxygen, medicated breathing treatments, anti-inflammatory drugs, diuretics, and antibiotics for pneumonia. This regimen lasted until Plaintiff was discharged on November 1, 2024.  During this stay, Plaintiff asked the attending physician what aggravated his COPD.  The Physician opined that probably smoke or fumes aggravated the previous lung damage that caused Plaintiff's hospitalization on April 22, 2024, which likely caused further stress on Plaintiff's heart.  After his discharge, Plaintiff remained on antibiotics at the prison until November 5, 2024.  Plaintiff was also issued a portable oxygen generator for 30 days.  (*Id.* at 10).

Plaintiff alleges that "Defendants Recary, Longia, Mevi and Chau were objectively and subjectively aware of Plaintiff's serious medical needs by written complaints, and by virtue of

their medical licenses and expertise as physicians with access to Plaintiff's medical records." (*Id.* at 14, 15). Plaintiff also alleges that all of the Defendants were aware of the "risk of further injury to Plaintiff that would directly and proximately result from cancelling Plaintiff's medications by virtue of defendants' medical knowledge/expertise, evinced by their medical licenses and Plaintiff's medical records." (*Id.* at 6).

### b. Analysis of Plaintiff's Allegations Regarding Breathing Medications

Upon review of Plaintiff's allegations, the Court finds that Plaintiff has adequately alleged that he had a serious medical need and that a failure to treat his condition could result in further significant injury or the unnecessary and wanton infliction of pain. Plaintiff alleges that he was previously diagnosed with COPD. Plaintiff alleges that he suffers from chronic allergy episodes producing excessive sinus mucous drainage problems causing chronic chest congestion that exacerbates Plaintiff's COPD and cardiac stress. Plaintiff alleges that these conditions were previously treated with prescriptions for "Azelastine" and "Nasacort" nasal sprays, "Singular," "Spiriva" and two inhalers.

The Court next turns to whether Plaintiff has alleged that individual defendants were deliberately indifferent to that serious medical need, starting with Dr. Chau. Plaintiff alleges that on March 14, 2024, Dr. Chau issued a prescription for Azelastine only, without seeing or examining Plaintiff. Dr. Chau "gave Plaintiff a cursory examination" on March 21, 2024, confirmed that he gave Plaintiff a prescription for Azelastine only, but not Nasacort or Singulair. Plaintiff further alleges "When Plaintiff asked why not, Chau's dissembling explanation: Singulair was contra-indicated for use with the "Asamax" Inhaler. Chau further told Plaintiff not to ask for Nasacort; instead get a free saline nasal spray at the canteen. When Plaintiff again questioned why, Chau "mumbled something about the state budget crisis."

Then, when Plaintiff was discharged from Mercy Hospital on April 25, 2024, the attending physicians prescribed another 5-day dose of antibiotics, Azelastine nasal spray for post-nasal drip, Nasacort to abate allergy nasal symptoms, and Singulair for improved blood

9

pressure. On April 26, 2024, Dr. Chau re-prescribed Plaintiff's Azelastine and Singular prescriptions, but discontinued Nasacort despite being prescribed by hospital physicians. When Plaintiff saw Dr. Chau on April 27, 2024, Dr. Chau prescribed Azelastine and Singulair, a 5-day regimen of antibiotics but no Nasacort, "stating that the prison Pharmacist 'didn't recommend using Azelastine with Nasacort," and allegedly stating that "these decisions came from higher up." Dr. Chau told Plaintiff to again use a saline spray from the canteen, which Plaintiff alleges was "a totally ineffective substitute."

After Plaintiff continued to suffer continuous coughing up post-nasal mucous and allergy-driven acute nasal discharges daily, on July 15, 2024, Plaintiff again requested Nasacort from Dr. Chau. Dr. Chau prescribed "Triamcinolone" nasal spray as a substitute. Plaintiff states "It was/is effective."

In summary, Plaintiff alleges that Dr. Chau treated him for his COPD by prescribing Azelastine only, but not Nasacort and initially not Singulair. As for Singulair, Dr. Chau stated that Singulair was contra-indicated for use with the "Asamax." Following Plaintiff's hospitalization, Dr. Chau prescribed Singulair as well. As for Nasacort, Dr. Chau originally told Plaintiff to get instead get a free saline nasal spray at the canteen and "mumbled something about the state budget crisis." He also later told Plaintiff that "the prison Pharmacist didn't recommend using Azelastine with Nasacort." And on July 15, 2024, Dr. Chau prescribed Triamcinolone as a substitute for Nasacort, which was effective.

Upon review, the Court finds that these allegations, even if true, do not rise to the level of deliberate indifference to serious medical needs as to Dr. Chau. According to Plaintiff, Dr. Chau initially treated his COPD with a prescription for Azelastine. Although he initially did not prescribe Singulair, he provided a medical reason for failing to do so, and eventually prescribed Singulair as well following the hospital's instructions. As for Nasacort, Dr. Chau eventually provided a medical reason—that the Pharmacist didn't recommend using Azelastine with Nasacort—and later provided an effective alternative. While Plaintiff also alleges that for

some time Dr. Chau told Plaintiff to use saline nasal spray at the canteen due to "something about the state budget crisis," this alone is not sufficient to indicate deliberate indifference to serious medical needs.  Plaintiff does not deny that saline nasal spray was available at the canteen.  Moreover, even according to Plaintiff, Dr. Chau gave other medical reasons for his decision.  Taken together, Plaintiff's allegations do not indicate that Dr. Chau purposefully failed to respond to Plaintiff's medical need, nor chose a course of treatment that was medically unacceptable to establish a constitutional violation under the Eighth Amendment.  Rather, Plaintiff's allegations demonstrate a difference of opinion regarding the appropriate medical diagnosis and treatment, which is not enough to establish a deliberate indifference claim.

       The Court next turns to Plaintiff's allegations against Defendants Recary, Longia and Mevi.  Plaintiff alleges that "On or about 1/10/24, pursuant to the alleged cost-saving policy, Defendants Recary, Longia and Mevi, through their collective chain of command, agreed to and directed Defendant Chau to cancel the Azelastine, Nasacort and Singulair prescriptions with no substitutes."  If true, this could support a claim for deliberate indifference to serious medical needs.  However, this allegation is conclusory.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 544 (2007).  Plaintiff does not allege any facts supporting this allegation.  He does not allege that he saw any document or heard any statement indicating that these individuals told Dr. Chau to cancel these prescriptions.  He does not allege that Dr. Chau told Plaintiff this.  On the contrary, his first specific allegation regarding Dr. Chau is that "On or about 3/14/24, Defendant Chau issued a prescription for Azelastine only," which is inconsistent with Plaintiff's allegation that Dr. Chau was told by three supervisors to cancel that prescription.  Moreover, as described above, Dr. Chau told Plaintiff that he was not prescribing Singulair because it was "contra-indicated for use with the 'Asamax' Inhaler," and not because he had been told to cancel the prescription by Recary, Longia or Mevi.  Thus, this statement appears to be Plaintiff's speculation regarding

Recary, Longia and Mevi's role and not a factual allegation based on Plaintiff's knowledge and observation.

Plaintiff's other allegation regarding these three defendants is that "on or about 2/20/24, 3/15/24 and on 4/10/24 Plaintiff sent written requests on Form GA-22 Interview Requests for help to Defendants Mevi, Longia (2/20/24, 3/15/24) and Longia and Recary (4/10/24). Plaintiff received no responses from any of them." (ECF No. 1 at 8). Plaintiff also attached to his complaint his requests for interview to these defendants. But the mere fact that Plaintiff requested an interview with these individuals does not establish that they violated his constitutional rights. Plaintiff does not allege that they had any duty to respond to those requests for interviews, or failed to respond due to a purposeful failure to address his serious medical need. After all, Dr. Chau was Plaintiff's primary care physician who was providing care starting on March 14, 2024. In contrast, Recary was the Chief Medical Executive Officer at VSP-Chowchilla, Longia was the prison's Chief Medical Executive, and Mevi was the Chief Physician/Surgeon. Plaintiff's allegation that he wrote to medical supervisors at the prison and asking for an interview does not set forth a claim for deliberate indifference to serious medical needs.

The Court also finds that Plaintiff fails to state a claim for deliberate indifference to serious medical needs as to Defendant Bick. Plaintiff does not allege any facts indicating that Defendant Bick had any role in denying Plaintiff any medication. Although Plaintiff asserts in his cause of action that Defendant Bick was "objectively and subjectively aware of Plaintiff's serious medical needs by written complaints, and by virtue of their medication licenses and expertise as physicians with access to Plaintiff's medical records," Plaintiff does not allege that Defendant Bick had any role in the decision regarding his medication. Plaintiff also does not allege any facts indicating that Dr. Bick was aware of Plaintiff's complaints or had any role in addressing those complaints.

Plaintiff's complaint also alleges that his breathing medications were cancelled for a

period of time in early 2024 without explanation. Specifically, Plaintiff's complaint alleges that "After Plaintiff was transferred to VSP on February 23, 2023, Plaintiff's prescriptions continued without interruption until January 10, 2024, when they were cancelled." Plaintiff does not state who cancelled his prescriptions. (Although he elsewhere alleges that "Defendants Recary, Longia and Mevi, through their collective chain of command, agreed to and directed Defendant Chau to cancel the Azelastine, Nasacort and Singulair prescriptions with no substitutes" as described above, this appears to be speculation based on their supervisory roles rather than a factual allegation.) Plaintiff also alleges that he "repeatedly requested renewal of the Azelastine and Nasacort nasal sprays using CDCR Forms 7362," on February 13, 17, 20, and March 1, 2024. Plaintiff received no response to these requests for medication and did not see a physician. (ECF No. 1 at 7). Elsewhere, he alleges "Defendants Recary, Longia and Mevi were aware of Defendant Chau's acts and omissions and Plaintiff's suffering as evinced by Defendant Mevi's Institution level Response to Plaintiff's grievance, Log No. 24000408, showing a two-month delayed single response to Plaintiff's numerous complaints of breathing problems, yet failed to intercede." (ECF No. 1 at 14). Plaintiff does not attach Mevi's response or allege what it said.

      The Court finds that these allegations are insufficient to state a claim against any Defendant. The only factual allegation, rather than a conclusion or speculation, as to who cancelled Plaintiff's prescriptions is his allegation that Dr. Mevi eventually responded to Plaintiff's grievances on the issue. However, even as to Dr. Mevi, Plaintiff does not allege what Dr. Mevi said in the response, so the Court cannot evaluate whether Dr. Mevi acted with deliberate indifference to Plaintiff's serious medical needs, or if Dr. Mevi reached a different medical conclusion or acted with mere negligence.

      The Court thus finds that Plaintiff's complaint fails to state a claim for deliberate indifference to serious medical needs regarding his Breathing Medications as to any named defendant. Accordingly, the Court will recommend that Plaintiff's deliberate indifference to

serious medical needs regarding his Breathing Medicatio be dismissed for failure to state a claim.

### 3. Orthotics

Plaintiff's complaint also alleges deliberate indifference to serious medical needs regarding orthotic footwear.

Specifically, Plaintiff alleges that Plaintiff had replacement knee surgery on his right leg in 2019. "Because of incompetent post-surgical physical therapy, Plaintiff's right leg is approximately 1-inch shorter than the left leg." (ECF No. 1 at 5). Plaintiff only obtained non-orthotic "therapeutic" footwear until his transfer to VSP-Chowchilla on February 23, 2023. On January 23, 2024, Plaintiff complained of sciatic and right hip pain. Dr. Showalter (who is not named as a defendant) measured "by eyeball only" Plaintiff's right leg to be approximately ¾-1" shorter than the left leg. Plaintiff alleges:

> Plaintiff was told that per CDCR protocols, orthotics would not be provided as Plaintiff's leg had to be 1 ½" shorter to get orthotic shoes. The protocol was identified as the 'InterQual' HMO cost-benefit cost-reduction study for hospitals and insurance companies.
>
> The study utilizes vague and ambiguous terms such as 'clinical necessity' and 'medical need' as yardsticks to justify denials of patient needs such as orthotics by setting protocols that are physically impossible to meet without catastrophic injury and major surgery. The study offers no relief for patients not meeting these protocols.
>
> Disallowing Plaintiff orthotic shoes or insert causes Plaintiff to continually suffer an otherwise unnecessary wanton infliction of constant pain from recurring damages to sciatic nerve injury and further damages to his joints caused by unequal weight distribution while standing/walking. As a result Plaintiff is permanently injured and must limp for the rest of his life and use a walker and/or a cane to ambulate, and when no longer ambulatory, a wheel chair.

(ECF No. 1 at 5).

Plaintiff later alleges that Dr. Chau gave Plaintiff a pair or therapeutic shoes on March 21, 2024.

These allegations fail to state a claim for deliberate indifference to serious medical needs as to any named defendant.

First of all, Plaintiff does not name any individual defendant who purposefully failed to treat this medical need. His only allegation of a specific interaction with a medical professional is with Dr. Showalter. However, Dr. Showalter is not named as a defendant in Plaintiff's complaint. Even as to Dr. Showalter, Plaintiff does not allege that Dr. Showalter indicated in any way that Plaintiff required orthotic shoes to address a serious medical need.

Plaintiff also fails to identify any facts indicating he has a medical need for orthotics. Plaintiff alleges that he had non-orthotic "therapeutic" footwear from 2019 until 2013. Plaintiff also alleges that Dr. Chau gave him a pair of therapeutic shoes on March 21, 2024. Plaintiff does not allege that any medical professional told him that orthotic shoes, rather than therapeutic shoes, were medically necessary to address his his sciatic and hip pain. Although Plaintiff alleges that this lack of orthotic footwear resulted in him being permanently injured for his life, he does not allege any facts or medical opinion to support this conclusion.

Instead, it appears that Plaintiff's only allegation is that he was told that the prison is following the directions of an HMO cost-benefit cost-reduction study for hospitals and insurance companies. This alone is not sufficient to allege that Plaintiff had a serious medical need for orthotic footwear and that any individual acted with deliberate indifference to that serious medical need.

Accordingly, the Court will recommend that Plaintiff's deliberate indifference claim be dismissed for failure to state a claim.

**4. Prostate Medical issues**

Plaintiff also alleges deliberate indifference to serious medical needs as to Plaintiff's urology/prostate issues.

Plaintiff specifically alleges that on September 15, 2024, an "offsite" urologist prescribed him doxazosin together with finasteride. (ECF No. 1 at 31). Dr. Chau filled the

15

recommended prescription. However, Plaintiff experienced excessive uncontrolled urination and stopped taking 'tamulosin' altogether voluntarily. On September 15, 2024, Dr. Chau changed Plaintiff's prescription to 4 mg of doxazosin, which brought urination under control but still excessive. Dr. Chau also prescribed a drug called finasteride, which proved helpful.

On October 10, 2024, Dr. Chau brought Plaintiff to his office because he was concerned that Plaintiff's "PSA" score had doubled from 3 to 6, and that there was an anomaly in Plaintiff's chest x-ray exam. On October 20, 2024, Plaintiff consulted a physician's desk reference for prescription drugs and learned that doxazosin and finasteride were contra-indicated for use together and would likely cause prostate cancer.

Finally, on November 6, 2024, Plaintiff was seen at VSP-Chowchilla by a Dr. James Mather, who renewed all of Plaintiff's medications except for Finisteride. A nurse-generated prescription for a diuretic drug "lasik" was added, but Plaintiff refused to accept it because it aggravated his incontinence issues.

These allegations do not state a claim for deliberate indifference to serious medical needs. Notably the urologist who prescribed the medications is not named as a defendant. In any event, there is no indication that even that doctor acted with deliberate indifference to Plaintiff's medical needs, rather than at most being negligent in prescribing the two medications. Plaintiff's allegations as to Dr. Chau indicate that Dr. Chau addressed Plaintiff's concerns. Indeed, they show that Dr. Chau responded to a concern about Plaintiff's PSA score and independently sought out Plaintiff to address the issue.

Accordingly, Plaintiff fails to state a claim for deliberate indifference to serious medical needs related to his urology medication. The Court will also recommend that Plaintiff's deliberate indifference to serious medical needs related to his urology medication be dismissed due to failure to state a claim.

### 5. Unconstitutional Policies

Plaintiff also alleges that CDCR and supervisory defendants instituted unconstitutional

cost-cutting policies and protocols including:

    a) arbitrary re-classified efficacious drugs and medicines from "formulary" to "non-formulary" based exclusively on cost without providing efficacious less costly substitutes;

    b) cancelling inmates' re-classified "non-formulary" prescriptions based on cost alone, with no existing policy option or authorization to continue "non-formulary" prescriptions when no less expensive equally efficacious "formulary" medicines are available;

    c) cancelling prescriptions with no medical evidence (examination or lab tests) to support any medical decision to cancel existing prescriptions;

    d) summarily ignore inmates' requests to renew cancelled prescriptions until further serious injury results;

    e) adoption and use of cost-saving protocols for non-correctional for-profit hospitals, clinics, HMO's and insurance companies (whose customers have care-provider options) to deny or refuse to prescribe otherwise medically necessary treatments, surgeries, orthopedic equipment or devices, i.e. Plaintiff's orthotic shoes, based solely on protocols "predicating" Plaintiff's medical needs in terms of cost alone.

(*Id.* ¶ 41).

    Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676–77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed

to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and alterations omitted).

Plaintiff's allegations regarding these medical policies fail to state a constitutional claim for deliberate indifference to serious medical needs because Plaintiff has not alleged that these policies directly caused a violation of his constitutional rights, by resulting in deliberate indifference to his serious medical needs. The Court has already addressed Plaintiff's specific allegations regarding his medical needs regarding breathing medications, orthotics, and prostate/urology treatment and described why those allegations fail to state a claim. Plaintiff cannot separately challenge policies as being unconstitutional without alleging that these policies caused him a constitutional deprivation. In other words, Plaintiff cannot state any constitutional claim based on these alleged policies if those policies did not result in deliberate indifference to Plaintiff's serious medical needs. Therefore, the Court will recommend dismissing any constitutional claim based on these alleged policies if such claims did not result in deliberate indifference.[1]

\\\

---

[1] Plaintiff's complaint also alleges a cause of action for "Violation of the 9th Amendment—Pursuit of Happiness," based on the claim that defendants violated "Plaintiff's unenumerated inalienable right to the pursuit of happiness and all of life's joys and pleasures guaranteed by the Ninth Amendment." (ECF No. 1, at p. 16). The Court does not know of any legal basis for this claim, separate from the rights discussed above. Plaintiff's complaint also alleges a cause of action for "Denial of Due Process," on the ground that defendants "inflicted corporal injury/punishment on Plaintiff without furthering any legitimate penal objective or purpose, and constitutes infliction of cruel and unusual punishment without Due Process in violation of the Fourteenth Amendment Procedural Due Process Clause." (ECF No. 1 at 16). Because the Court finds that Plaintiff has not alleged a violation of the Eighth Amendment related to cruel and unusual punishment, it also does not find any claim for a violation of due process based on such a violation.

### IV. CONCLUSION AND RECOMMENDATIONS

The Court has screened Plaintiff's complaint and finds that it fails to state any cognizable claims. The Court provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to state a claim, and gave Plaintiff leave to file a First Amended Complaint, but, despite several extensions of time, Plaintiff did not file an amended complaint.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action be dismissed for failure to state a claim; and
2. The Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 23, 2025**        /s/ Erica P. Grosjean
                                     UNITED STATES MAGISTRATE JUDGE