UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DAVID W. FAUNCE,

Plaintiff,

v.

BICK, *et al.*,

Defendants.

Case No. 1:25-cv-00006-KES-EPG (PC)

FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITHOUT FURTHER LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM

(ECF No. 25)

OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS

ORDER DIRECTING CLERK OF COURT TO ADD DEFENDANT SHOWALTER TO THE DOCKET

(ECF No. 25, p. 3)

Plaintiff David Faunce proceeds *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 4, 25). Plaintiff filed his initial complaint on January 3, 2025. (ECF No. 1). On April 4, 2025, the Court issued a screening order, concluding that Plaintiff's complaint failed to state any cognizable claims. (ECF No. 9). The Court provided Plaintiff with applicable legal standards, explained why he failed to state a claim, and gave him leave to file a first amended complaint.

After multiple extensions, Plaintiff filed a first amended complaint on November 6, 2025. (ECF Nos. 24, 25).  Plaintiff alleges that the Chief Director Health Care Services of

1

Corrections and Rehabilitation (CDCR), the Chief Medical Executive Officer of Valley State Prison Chowchilla (VSP), the Chief Medical Executive of VSP, and the Chief Physician/Surgeon of VSP, as well as two of his primary care physicians, were deliberately indifferent to his serious medical needs by implementing a cost-cutting scheme in response to a budget shortfall.

Upon review of the amended complaint, the Court will recommend that this case be dismissed for failure to state a claim and without granting further leave to amend.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Additionally, as Plaintiff is proceeding *in forma pauperis* (ECF No. 4), the Court may screen the complaint on these same bases under 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## II. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's first amended complaint names the following defendants: (1) Joseph Bick, MD, Director of the California Department of Corrections and Rehabilitation (CDCR) Health Care Services; (2) Raul Recary, Chief Medical Executive Officer at Valley State Prison (VSP); (3) Harminder Longia, Chief Medical Executive at VSP; (4) Jason Mevi, MD, Chief Physician/Surgeon at VSP, (5) James Chau, MD, a primary care physician at VSP; and (6) Showalter, MD, a primary care physician at VSP.[1] (ECF No. 25, p. 3).

Plaintiff alleges that from January 23, 2023 until the present, Defendant Bick enacted a "state-wide CDCR Health Care Services cost-cutting scheme in response to a state budget shortfall, to be enforced at every prison and institution within CDCR." (ECF No. 25). Plaintiff alleges that the entire cost-cutting scheme "its policy, protocols, and enforcement practices, is

---

[1] The Court will direct the Clerk of Court to add Defendant Showalter to the docket.

inofitself so deficient that it repudiates Plaintiff's Eighth and Fourteenth Amendment rights." (ECF No. 25, at p. 4).  As part of that scheme, Plaintiff alleges that Defendants "arbitrar[ily] re-classified efficacious drugs and medicines from 'formulary' to 'non-formulary' based exclusively on cost with no provision for providing less costly efficacious substitutes for each drug re-classified." (ECF No. 25, at p. 4).  Plaintiff alleges that this resulted in cancellation of prescriptions without medical evidence, ignoring inmates' requests to renew cancelled prescriptions, and refusing to order diagnostic tests to determine injury "using the mantra 'what is not diagnosed cannot be treated, ergo saving money.'" (ECF No. 25, at p. 4).  Defendants also adopted cost-saving measures designed for for-profit hospitals, HMO's clinics and insurance companies.  Plaintiff also alleges that "Defendants' collective hierarchical chain of command precludes the need for training by the Attorney General's office regarding the legal boundaries circumscribing enforcement . . . ." (ECF No. 25, at p. 5).

Plaintiff alleges that as a result of this policy, Plaintiff suffers from "(a) permanent lung damage from withholding, delaying breathing medications for non-medical reasons without providing medically efficacious substitutes; (b) lifetime of daily hip, back, leg pain and a lifetime limp amounting to a wanton infliction of unnecessary pain and agony daily precluding otherwise normal daily life activities." (ECF No. 25, at p. 5).

Plaintiff specifically alleges that a "fill-in" doctor, Defendant Showalter, told Plaintiff he could not receive orthotics due to a protocol called "'Interqual' HMO cost benefit study for hospitals, HMOs and health insurance companies." (ECF No. 25, at p. 6).  Instead of providing Plaintiff with orthopedic exam or inserts, Defendant Showalter referred Plaintiff back to his regular primary care physician for further review.  (ECF No. 25, at p. 6).  Plaintiff argues that the "Interqual" protocol "utilizes vague, ambiguous terms, i.e., 'clinical necessity' and 'medical need' as undefined 'yardsticks' to justify denial of patient needs for orthotics by setting protocols physically impossible to meet without catastrophic injury and major surgery." (ECF No. 25, at p. 6).  Plaintiff alleges that, as a result, he endures "pain and suffering 24 hours/day." (ECF No. 25, at p. 7).

Plaintiff also alleges that he has acute COPD.[2]  Although he previously had standing prescriptions for several medications, from January 10, 2024 until April 22, 2024, pursuant to Defendants' cost-saving policies, Defendant Chau failed to renew two of these medications, Azelastine and Nasacort.  (Elsewhere, Plaintiff states that on March 21, 2024, Defendant Chau re-prescribed Azelastine.)  In April 2024, Plaintiff was hospitalized for acute breathing problems and was prescribed Singulair, Azelastine and Nasacort.  Defendant Chau prescribed Singulair and Azelastine, but not Nasacort because "Chau said to use a saline spray in the prison canteen," which Plaintiff claims was "an ineffective substitute against allergy driven nasal discharges."  (ECF No. 25, at p. 9).  When Plaintiff's coughing episodes continued, on July 24, 2024, Defendant Chau prescribed "Triamcinolone," a generic for Nasacort, but Plaintiff alleges there was no medical reason not to prescribe this medication earlier.

Plaintiff's first amended complaint asserts claims for deliberate indifference to his serious medical needs in violation of the Eighth Amendment and violation of his substantive due process rights in connection with his medical claims. (*Id.* at 12–13). Lastly, Plaintiff lists his requests for declaratory and injunctive relief as freestanding legals claims. (*Id.* at 13–14).

### III.    ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

#### A.  Supervisory Liability for Cost-Cutting Policy

Plaintiff's first amended complaint claims that Supervisory Defendants, including the Director of Health Care Services of CDCR, Chief Medical Executive Officer at VSP, Chief Medical Executive at VSP, and Chief Physician Surgeon at VSP were deliberately indifferent to his serious medical needs by implementing an "unconstitutional official policy" in response to a budget shortfall that is "so deficient that it repudiates Plaintiff's Eighth and Fourteenth Amendment rights."  (ECF No. 25, at p. 3-4).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also*

---

[2] Although Plaintiff does not define this term, it likely refers to Chronic Obstructive Pulmonary Disease.

*Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676–77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and

internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff's allegations against the Supervisory Defendants based on their implementation of a cost-cutting policy fail to state a claim under these legal standards.

First, Plaintiff's allegations against the supervisory defendants concern their role in implementing general cost-cutting policies, rather than in directly denying Plaintiff medical care. Plaintiff does not allege that Defendants Bick, Recary, Longia, or Mevi, as the Director of CDCR Health Care Services, Chief Medical Executive Officer of VSP, Chief Medical Executive of VSP, and Chief Physician Surgeon at VSP personally treated Plaintiff or decided which medications to provide. Although Plaintiff states that these defendants ordered Defendant Chau to discontinue certain medications (discussed further below), Plaintiff does not allege any facts supporting this allegation, such as anything anyone said or wrote. Similary, Plaintiff alleges that he sent various requests for review/help to the defendants, but this alone does not indicate that these supervisory defendants in fact had any direct role in Plaintiff's medical care.

Second, Plaintiff's allegations that the policy itself is a violation of his constitutional rights fail to state a claim to the extent those allegations are not tied to Plaintiff's own medical care. For example, Plaintiff claims that the policy itself is constitutionally deficient because it results in a lack of diagnostic testing and lack of adequate supervision and accountability. However, Plaintiff fails to allege that these alleged deficiencies affected his medical care in any way.

Thus, Plaintiff's allegation that the Supervisory Defendants were deliberately indifferent to his serious medical needs by implementing a cost-cutting policy scheme at CDCR and VSP fails to state a claim.

**B. Deliberate Indifference to Serious Medical Needs**

Plaintiff also alleges that two physicians who treated him directly were deliberately indifferent to his serious medical needs. Specifically, he alleges that Defendant Showalter, a "fill-in" physician, failed to prescribe him orthotics and instead referred him back to his primary care physician for review. He also alleges that Defendant Chau failed to prescribe

certain prescriptions for a limited amount of time.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer*, 511 U.S. at 836–37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "To show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir.

2019) (internal quotation marks and citation omitted).

Lastly, delays in providing medical care may manifest deliberate indifference. *Estelle*, 429 U.S. at 104–05. To establish a claim of deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay led to further harm and that Defendants purposefully ignored his medicals needs knowing about the risk of harm from delay in treatment. *See McGuckin*, 974 F.2d at 1060 (noting that delays in receiving medical care must be harmful and that "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established"); *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (noting that Defendants must be aware that a delay in treatment would be harmful).

Regarding Defendant Showalter, Plaintiff alleges that on or about January 23, 2024, Plaintiff "complained of sciatic and right leg and hip pain." (*Id.* at 6). Defendant Showalter "stated that she was only a 'fill-in' and not a regular primary care physician" but she visually examined Plaintiff and estimated "by eyeball only" that his "right leg was 3/4 – 1 inch shorter that his left leg." (*Id.*). "Plaintiff asked Showalter to prescribe either an orthopedic exam or orthotic inserts or shoes [because] he could not ambulate correctly without a limp, which was painful and damaging his hip and back." (*Id.*). However, she told him "that per CDCR protocols orthotics would not be provided as the Plaintiff's right leg had to be 1-1/2 inches shorter to qualify for orthotic shoes." (*Id.*). "Showalter identified the protocol as the "Interqual" HMO cost benefit study for hospitals, HMO's and health insurance companies" and she "referred [him] back to the regular PCP for further review." (*Id.*).

These allegations fail to state a claim for deliberate indifference to serious medical needs as to Defendant Showalter.  First, Plaintiff fails to allege that he has a serious medical need for orthotic shoes.  Plaintiff only summarily asserts that he needs the shoes "to equalize leg lengths and weight distribution caus[ing] recurring sciatic nerve damage" among other injuries. (ECF No. 25, p. 7).  However, Plaintiff does not allege any facts supporting this allegation, such as any opinion of a medical professional that Plaintiff needed orthotics to treat a serious medical condition.

Moreover, Plaintiff omits material information from his initial complaint—that he had non-orthotic "therapeutic" footwear until his transfer to VSP in February 2023 and that Dr. Chau gave him a pair of therapeutic shoes in March 2024. (ECF No. 1, pp. 5, 7); *see Ramirez v. Fortune*, No. 1:19-CV-00746-NONE-BAM (PC), 2020 WL 4273921, at *4 (E.D. Cal. July 24, 2020), *report and recommendation adopted*, 2020 WL 6158143 (E.D. Cal. Oct. 21, 2020) ("Plaintiff cannot simply omit allegations or exhibits in order to state a cognizable claim for relief."). Taking into account this allegation, Plaintiff has not sufficiently alleged that he had a medical need for orthotics, rather than therapeutic shoes.

Moreover, Plaintiff does not allege that Defendant Showalter acted with deliberate indifference to his serious medical needs. Plaintiff does not allege that Defendant Showalter believed that Plaintiff required orthotics, yet refused to provide them. Moreover, although Defendant Showalter did not prescribe him with orthotic shoes, she "referred me back to the regular PCP for further review." (ECF No. 25, at p. 6). Especially considering that Defendant Showalter was only acting as fill-in physician, referring Plaintiff back to his PCP for further review does not indicate deliberate indifference to his serious medical needs.

As for Defendant Chau, Plaintiff alleges that Plaintiff previously had standing prescriptions for Azelastine, Nasacort nasal sprays, and Singulair "to stop mucous and for lung performance." (ECF No. 25, at p. 8). However, Defendant Chau discontinued Azelastine from January 10, 2024 until April 22, 2024, and discontinued Azelastine from January 10, 2024 until March 21, 2024. (ECF No. 25, at p. 9). Plaintiff alleges that Defendant Chau made this decision because Azelastine and Nasacort were re-classified from formulary drugs to non-formulary drugs. After Plaintiff was hospitalized for acute breathing problems from April 22, 2024 until April 25, 2024, Defendant Chau prescribed Singulair and Azelastine. However, Defendant Chau did not prescribe Nasacort because "Chau said to use a saline spray in the prison canteen," which Plaintiff claims was an ineffective substitute. Defendant Chau then prescribed a generic for Nasacort, Triamcinolone, on July 24, 2024. (ECF No. 25, at p. 9-10)

These allegations fail to state a claim for deliberate indifference to serious medical needs as to Defendant Chau. Plaintiff fails to allege facts showing that Defendant Chau's

relatively brief cancellation of Plaintiff's prescriptions amounted to a purposeful failure to respond to Plaintiff's medical needs.  Plaintiff does not allege that Defendant Chau believed that Plaintiff required those prescriptions during that time, yet failed to provide them.  Although Plaintiff claims that Defendant Chau was forced to discontinue the prescriptions due to the cost-cutting policy, he also alleges that Defendant Chau later reinstated two of the prescriptions—for Aingulair and Azelastine—a few months later, and prescribed a generic form of Nasacort a few months after that. These allegations demonstrate that Defendant Chau was permitted to prescribe these medications notwithstanding any CDCR policies.

Moreover, Plaintiff again omits material allegations from his first complaint.  In that complaint, Plaintiff alleged that Dr. Chau stated that he discontinued Nasacort "the prison pharmacist didn't recommend using Azelastine with Nasacort." (ECF No. 1, p. 9).

In short, Plaintiff has not alleged that Defendant Chau was deliberately indifferent to his serious medical needs.

### C.  Due Process

In his third claim for relief, Plaintiff states that Defendants' alleged deliberate indifference to his serious medical needs also violated his "Fourteenth Amendment Substantive Due Process right to be free from arbitrary, capricious, and irrational punishment by state action." (ECF No. 25, p. 12). However, Plaintiff does not provide any legal basis for his due process claim, separate from his Eighth Amendment medical claims discussed above.  *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (internal quotation marks and citation omitted).

### D.  Requests for Relief

Plaintiff fourth[3] and final claim for relief requests certain declaratory and injunctive relief. (ECF No. 25, pp. 13–14). However, these are remedies--not freestanding claims. *See*

---

[3] Plaintiff mistakenly lists this as his third claim although he already listed a third claim related to substantive due process discussed above.

*Lorona v. Arizona Summit L. Sch., LLC*, 151 F. Supp. 3d 978, 997 (D. Ariz. 2015) ("The Second Amended Complaint lists declaratory and injunctive relief as separate counts. These are remedies, not independent causes of action.") (internal citation omitted).

## IV.   ORDER, CONCLUSION, AND RECOMMENDATIONS

The Court has screened Plaintiff's first amended complaint and concludes that it fails to state any cognizable claims. Based on the reasons given above, the Court will recommend that this case be dismissed without granting further leave to amend. Notably, in its order screening the initial complaint, the Court identified similar deficiencies that persist in Plaintiff's amended complaint and gave him the opportunity to state a cognizable claim. The Court thus concludes that further leave to amend would be futile.

Accordingly, IT IS ORDERED that the Clerk of Court shall revise the docket to add Showalter as a Defendant.

And IT IS RECOMMENDED as follows:

1.  This action be dismissed without granting further leave to amend.

2.  The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 2, 2026**                    /s/ *Erica P. Grosjean*
                                             UNITED STATES MAGISTRATE JUDGE